| | |
|---|---|
| ROBERT STROUGO, Individually and On Behalf of All Others Similarly Situated, | ) )  **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) ) **CLASS ACTION COMPLAINT** ) |
| AEGEAN MARINE PETROLEUM NETWORK INC., E. NIKOLAS TAVLARIOS AND SPYROS GIANNIOTIS, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Robert Strougo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aegean Marine Petroleum Network Inc. ("Aegean" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Aegean securities between

April 28, 2016 through June 4, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Aegean Marine Petroleum Network Inc. supplies and markets refined marine fuel and lubricants to ships in port and at sea. The Company also owns and operates a fleet of bunkering tankers in multiple jurisdictions.

3.     Founded in 1995, Aegean is headquartered in Piraeus, Greece, and its securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "ANW."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aegean had improperly accounted for an approximate $200 million of accounts receivable as of December 31, 2017; (ii) Aegean failed to maintain effective internal control over financial reporting; and (iii) as a result of the foregoing, Defendants' statements about Aegean's business, operations, and prospects, were materially false and misleading at all relevant times.

5.     On May 22, 2018, Aegean Marine announced an internal review of its financial reporting. Then, on June 4, 2018, Aegean Marine announced its preliminary findings from the review, including that "approximately $200 million of accounts receivable at December 31, 2017 will need to be written off." Aegean Marine further advised investors that certain "transactions that gave rise to the accounts receivable . . . may have been, in full or in part, without economic

substance and improperly accounted for in contravention of the Company's normal policies and procedures."

6.　　On this news, Aegean Marine's share price fell $2.15, or 75.43%, to close at $0.70 on June 5, 2018.

7.　　As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.　　The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.　　Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Aegean's stock trade on the NYSE, located this Judicial District.  This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11.　　In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12.     Plaintiff, as set forth in the attached Certification, acquired Aegean's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Aegean is headquartered in Greece, with principal executive offices located at 10, Akti Kondilli, Piraeus, Athens 185 45, Greece.  Aegean's securities trade on the NYSE under the ticker symbol "ANW."

14.     Defendant E. Nikolas Tavlarios ("Tavlarios") served as the Company's President and Principal Executive Officer from December 2006 to June 2017, and serves as its Consultant since June 1, 2017.

15.     Defendant Spyros Gianniotis ("Gianniotis") served as the Company's Chief Financial Officer ("CFO") from September 1, 2008 to April 17, 2018; and serves as its Consultant since April 17, 2018.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Aegean's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

4

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Aegean Marine Petroleum Network Inc. is a marine fuel logistics company that supplies and markets refined marine fuel and lubricants to ships in port and at sea. The Company also owns and operates a fleet of bunkering tankers in multiple jurisdictions.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on April 28, 2016, when Aegean filed an Annual Report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 20-F"). In the 2015 20-F, the Company reported trade receivables of approximately $309 million, compared to trade receivables of approximately $354 million in the previous year, stating in relevant part:

***Trade Receivables and Allowance for Doubtful Accounts***

We extend credit on an unsecured basis to many of our customers. There is uncertainty over the level of collectability of customer accounts. ***Our management is responsible for approving credit limits above certain amounts, setting and maintaining credit standards, and managing the overall quality of our credit portfolio.*** We perform ongoing credit evaluations of our customers and adjust credit limits based upon payment history and the customer's current credit worthiness. Accounts receivable are deemed past due based on contractual terms agreed with our customers.

We continuously monitor collections and payments from our customers and maintain a provision for estimated credit losses based upon our historical experience with our customers, current market and industry conditions of our customers and any specific customer collection issues that we have identified.

We transfer ownership of eligible trade accounts receivable to a third-party purchaser without recourse in exchange of cash. The factoring of trade accounts receivable under the agreement is accounted for as a sale. Proceeds from the transfer reflect the face value of the account less a discount. The receivables sold pursuant to this factoring agreement are excluded from trade accounts

5

receivable on our consolidated balance sheets and are reflected as cash provided by operating activities on our consolidated statements of cash flows. We do not record a servicing asset or liability on our consolidated balance sheets because we estimate that the fee we receive is at fair value. Servicing fees are recorded in the interest and finance costs in the accompanying consolidated statements of income. We continue to service, administer and collect the receivables sold under this program. The third-party purchaser has no recourse to our assets for failure of debtors to pay when due.

Accounts and notes receivable are reduced by an allowance for amounts that may become uncollectible in the future. ***At the end of each reporting period, we calculate an allowance for doubtful accounts based on an aging schedule where we apply set percentages to categories of overdue trade receivables. These set percentages are based on historical experience and currently available management information on customer accounts.*** Furthermore, we provide appropriate allowances for any specific customer collection issue we identify which allowance is calculated on a case-by-case basis. Trade receivables are written off when it becomes apparent based upon age or customer circumstances that such amounts will not be collected.

We believe the level of our allowance for doubtful accounts is reasonable based on our experience and our analysis of the net realizable value of our trade receivables during each reporting period. The estimates driving the calculation of our allowance for doubtful accounts have not changed in the past periods and we do not expect these estimates to change in the foreseeable future because they have resulted and we believe that they will continue to result in accurate calculations of our allowance for doubtful accounts. We cannot guarantee that we will continue to experience the same credit loss rates that we have experienced in the past, since adverse changes in the marine industry or changes in the liquidity or financial position of our customers could have a material adverse effect on the collectability of our trade receivables and our future operating results. If credit losses exceed established allowances, our results of operations and financial condition may be adversely affected.

***

**AEGEAN MARINE PETROLEUM NETWORK INC.**
**CONSOLIDATED BALANCE SHEETS**
*(Expressed in thousands of U.S. dollars – except for share and per share data)*

| | December 31, | |
|---|---|---|
| | 2015 | 2014 |
| **ASSETS** | | |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $139,314 | $129,551 |
| Trade receivables, net of allowance for doubtful accounts of $7,278 and $5,851 as of December 31, 2015 and 2014, respectively (Note 2 and 4) | 309,874 | 354,223 |
| Trade receivables from related companies (Note 5) | 18,963 | 12,689 |
| Due from related companies (Note 5) | 6,887 | 5,973 |
| Derivative asset (Note 16) | 22,416 | 18,941 |
| Inventories (Note 6) | 114,531 | 156,990 |
| Prepayments and other current assets, net of allowances for doubtful accounts of $565 and $0, as of December 31, 2015 and 2014, respectively (Note 7) | 116,004 | 54,901 |
| Deferred tax asset (Note 25) | 2,133 | 754 |
| Restricted cash (Note 2) | 828 | 2,306 |
| **Total current assets** | **730,950** | **736,328** |

(Emphasis added.)

20.     The 2015 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that "the financial statements, and other financial information included in [the 2015 20-F], fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in [the 2015 20-F]."

21.     On May 16, 2017, Aegean filed an Annual Report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 ("2016 20-F"). In the 2016 20-F, the Company reported trade receivables of approximately $503 million, compared to trade receivables of approximately $309 million in the previous year. Throughout the 20-F the company reapproved the previous statements, and added in relevant part:

### Trade Receivables and Allowance for Doubtful Accounts

We extend credit on an unsecured basis to many of our customers. There is uncertainty over the level of collectability of customer accounts. ***Our management is responsible for approving credit limits above certain amounts, setting and maintaining credit standards, and managing the overall quality of our credit portfolio.*** We perform ongoing credit evaluations of our customers and

adjust credit limits based upon payment history and the customer's current credit worthiness. Accounts receivable are deemed past due based on contractual terms agreed with our customers.

We continuously monitor collections and payments from our customers and maintain a provision for estimated credit losses based upon our historical experience with our customers, current market and industry conditions of our customers and any specific customer collection issues that we have identified.

We transfer ownership of eligible trade accounts receivable to a third-party purchaser without recourse in exchange of cash. The factoring of trade accounts receivable under the agreement is accounted for as a sale. Proceeds from the transfer reflect the face value of the account less a discount. The receivables sold pursuant to this factoring agreement are excluded from trade accounts receivable on our consolidated balance sheets and are reflected as cash provided by operating activities on our consolidated statements of cash flows. We do not record a servicing asset or liability on our consolidated balance sheets because we estimate that the fee we receive is at fair value. Servicing fees are recorded in the interest and finance costs in the accompanying consolidated statements of income. We continue to service, administer and collect the receivables sold under this program. The third-party purchaser has no recourse to our assets for failure of debtors to pay when due.

Accounts and notes receivable are reduced by an allowance for amounts that may become uncollectible in the future. ***At the end of each reporting period, we calculate an allowance for doubtful accounts based on an aging schedule where we apply set percentages to categories of overdue trade receivables. These set percentages are based on historical experience and currently available management information on customer accounts.*** Furthermore, we provide appropriate allowances for any specific customer collection issue we identify which allowance is calculated on a case-by-case basis. Trade receivables are written off when it becomes apparent based upon age or customer circumstances that such amounts will not be collected.

We believe the level of our allowance for doubtful accounts is reasonable based on our experience and our analysis of the net realizable value of our trade receivables during each reporting period. The estimates driving the calculation of our allowance for doubtful accounts have not changed in the past periods and we do not expect these estimates to change in the foreseeable future because they have resulted and we believe that they will continue to result in accurate calculations of our allowance for doubtful accounts. We cannot guarantee that we will continue to experience the same credit loss rates that we have experienced in the past, since adverse changes in the marine industry or changes in the liquidity or financial position of our customers could have a material adverse effect on the collectability of our trade receivables and our future operating results. If credit losses exceed established allowances, our results of operations and financial condition may be adversely affected.

**AEGEAN MARINE PETROLEUM NETWORK INC.**
**CONSOLIDATED BALANCE SHEETS**
*(Expressed in thousands of U.S. dollars – except for share and per share data)*

| | December 31, | |
| --- | --- | --- |
| | 2016 | 2015 |
| | | Revised |
| **ASSETS** | | |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $ 93,836 | $ 139,314 |
| Trade receivables, net of allowance for doubtful accounts of $8,647 and $7,278 as of | | |
| December 31, 2016 and 2015, respectively (Note 2 and 3) | 503,751 | 309,874 |
| Trade receivables from related companies (Note 4) | 11,509 | 18,963 |
| Due from related companies (Note 4) | 9,548 | 6,887 |
| Derivative asset (Note 14) | - | 22,416 |
| Inventories (Note 5) | 187,766 | 114,531 |
| Prepayments and other current assets, net of allowances for doubtful accounts of $2,160 and | | |
| $565, as of December 31, 2016 and 2015, respectively (Note 6) | 95,885 | 116,004 |
| Deferred tax asset (Note 23) | 3,769 | 2,133 |
| Restricted cash (Note 2) | 3,188 | 828 |
| **Total current assets** | 909,252 | 730,950 |

(Emphasis added.)

22. The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that "the financial statements, and other financial information included in [the 2016 20-F], fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in [the 2016 20-F]."

23. The statements referenced in ¶¶ 19-22 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aegean had improperly accounted for an approximate $200 million of accounts receivable as of December 31, 2017; (ii) Aegean failed to maintain effective internal control over financial reporting; and (iii) as a result of the foregoing, Defendants' statements about Aegean's business, operations, and prospects, were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

24.     On May 22, 2018, Aegean Marine issued a press release, filed on Form 6-K with the SEC, entitled "Aegean Marine Petroleum Network Inc. Provides Business Updates," announcing an internal review of its financial reporting. Therein, the Company stated in relevant part:

> NEW YORK, May 22, 2018 -- Aegean Marine Petroleum Network Inc. (NYSE:ANW) ("Aegean" or the "Company"), a leading international marine fuel logistics company, today provided updates on its business and issued the following statement:
>
> > Aegean has reinvigorated its Board of Directors with the addition of three new independent directors, and today announced the appointment of Donald Moore to serve as Chairman of the Board.
> >
> > The Board of Directors has also directed management to conduct a comprehensive strategic and operational review focused on maximizing profitability and return on capital. This includes an evaluation of the Company's physical assets, existing footprint, and the capital efficiency of every business activity in which the Company is engaged and each port in which it operates.
> >
> > Following the recent termination of the Company's Consulting Agreement with Dimitris Melisanidis, the Company is planning to relocate its principal offices from the current location in a building owned and operated by Mr. Melisanidis. The Company expects the office relocation and related organizational changes to result in significant cost savings.
> >
> > Separately, Aegean recorded stable operating results in the first quarter of 2018 as network volumes and gross spreads were largely consistent with the fourth quarter of 2017, reflecting competitive industry conditions and the continued decision to restrain volumes in ports and lines of business with lower margin profiles. Aegean's business continues to generate positive cash flow and the management team remains focused on continuing to serve the Company's strong global customer base.
> >
> > Aegean continues to work through its annual reporting process, which includes a thorough review by the recently recomposed audit committee of the Board of Directors (the "Audit Committee") and the Company's recently appointed Chief Financial Officer. The Company and its advisors are working diligently to complete these reviews as soon as possible. The Company is pleased to have the continued support of its lenders and other stakeholders in connection with this process.

Aegean is committed to being a leader in the physical supply and marketing of marine fuel and is confident that its Board of Directors and management team are taking the right actions to position the Company for long-term success.

Aegean also announced that it has received an expected notice from the New York Stock Exchange (the "NYSE") stating that the Company is not in compliance with the NYSE's continued listing requirements under the timely filing criteria outlined in Section 802.01E of the NYSE Listed Company Manual due to the delay in filing the Company's Annual Report on Form 20-F for the fiscal year ended December 31, 2017 (the "2017 Form 20-F").

As previously disclosed, the Company was unable to file its 2017 Form 20-F without unreasonable effort or expense due to the need for additional time to complete the Company's consolidated financial statements to be included therein, and the related assessment of internal controls over financial reporting. In connection with the Company's internal review of its financial reporting, the Audit Committee is conducting a review of certain matters relevant to the preparation and completion of the Company's annual financial statements. The Company will not be in a position to file its 2017 Form 20-F until after the Audit Committee completes its review. At this time, the Company cannot predict with certainty when the above-referenced review of the 2017 financial statements will be completed. The Company does not expect to make further comment regarding such review until its conclusion.

In accordance with NYSE rules, Aegean has contacted the NYSE to discuss the status of the late filing and is issuing this required press release. The NYSE informed Aegean that, under NYSE rules, Aegean will have six months from the 2017 Form 20-F due date to file the 2017 Form 20-F with the U.S. Securities and Exchange Commission (the "SEC"). Aegean can regain compliance with the NYSE listing standards at any time prior to that date by filing its 2017 Form 20-F.

25.     On June 4, 2018, after the market closed, Aegean Marine issued a press release

entitled "Aegean Marine Petroleum Network Inc. Provides Update on Financial Reporting

Internal Review," wherein it stated in relevant part:

NEW YORK, June 4, 2018 – Aegean Marine Petroleum Network Inc. (NYSE:ANW) ("Aegean" or the "Company"), a leading international marine fuel logistics company, today provided an update on its ongoing internal review by the audit committee of the Company's Board of Directors (the "Audit Committee").

As previously disclosed, Aegean reported in a Form 6-K filed with the U.S. Securities and Exchange Commission ("SEC") on May 21, 2018 that the Audit Committee, is conducting a review of certain matters relevant to the preparation and completion of the Company's annual financial statements for the year ended

December 31, 2017. The Audit Committee, which is now solely comprised of the three recently elected independent members of the Board, previously retained independent legal counsel to assist with this review.

***Based on the preliminary findings of the review, the Audit Committee believes that approximately $200 million of accounts receivable owed to the Company at December 31, 2017 will need to be written off. These amounts are currently due from four counterparties that were reflected in the Company's financial statements as of December 31, 2017. There was approximately $172 million as of December 31, 2016 and $85 million as of December 31, 2015 due from these four counterparties. The transactions that gave rise to the accounts receivable ("the Transactions") may have been, in full or in part, without economic substance and improperly accounted for in contravention of the Company's normal policies and procedures.***

At this time, the Company cannot determine the full impact on the financial statements or how this adjustment will be recorded. In addition, there could be other adjustments that result from the Audit Committee's review that could impact the financial statements.

"Under the guidance of a reinvigorated Board, independent Audit Committee, and refreshed management team, Aegean continues to make progress in working through its annual reporting process and ongoing review of historical financial reporting," said Donald Moore, Chairman of the Board. "The new Board is taking all necessary actions to improve financial and operating performance and enhance both transparency and corporate governance in order to deliver value to our shareholders and other stakeholders."

As previously announced, the Board has directed management to conduct a comprehensive strategic and operational review focused on maximizing profitability and return on capital. This includes an evaluation of the Company's physical assets, existing footprint, and the capital efficiency of every business activity in which the Company is engaged and each port in which it operates.

Mr. Moore continued, "We thank our employees for their continued dedication and our new and existing customers and suppliers for their continued support. We are confident that Aegean is moving toward its goal of being the leader in the physical supply and marketing of marine fuel."

The Audit Committee is continuing its review and investigation of the Transactions and other matters, with the assistance of independent counsel and forensic accounting advisors, and expects to recommend to the Company that it pursue claims against individuals and entities involved in the Transactions. The Audit Committee is taking all the necessary and appropriate steps to identify weaknesses in the Company's internal controls and remedy any such weaknesses. A number of individuals employed by the Company across multiple functions who are believed to have been involved in the Transactions have been terminated

or placed on administrative leave pending the outcome of the investigation. The Company has reported its preliminary findings to the SEC and the Department of Justice and intends to cooperate with any resulting investigations. The Company does not intend to provide an update on this process until the review is completed.

(Emphasis added.)

26.     On this news, Aegean Marine's share price fell $2.15 or 75.43%, to close at $0.70 on June 5, 2018.

27.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aegean securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aegean securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Aegean or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Aegean;

- whether the Individual Defendants caused Aegean to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aegean securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aegean securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Aegean securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

37.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aegean securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aegean securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

40.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Aegean securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aegean's finances and business prospects.

41.	By virtue of their positions at Aegean , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

42.	Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Aegean, the Individual Defendants had knowledge of the details of Aegean's internal affairs.

43.	The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Aegean. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aegean's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Aegean securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Aegean's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Aegean securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

44.     During the Class Period, Aegean securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aegean securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aegean securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Aegean securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

45.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     During the Class Period, the Individual Defendants participated in the operation and management of Aegean, and conducted and participated, directly and indirectly, in the conduct of Aegean's business affairs.  Because of their senior positions, they knew the adverse non-public information about Aegean's misstatement of income and expenses and false financial statements.

49.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aegean's financial condition and results of operations, and to correct promptly any public statements issued by Aegean which had become materially false or misleading.

50.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aegean disseminated in the marketplace during the Class Period concerning Aegean's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aegean to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Aegean within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Aegean securities.

51.     Each of the Individual Defendants, therefore, acted as a controlling person of Aegean.  By reason of their senior management positions and/or being directors of Aegean, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aegean to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Aegean and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aegean.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 8, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, Robert Strougo, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Aegean Marine Petroleum Network Inc. ("Aegean" or the "Company") and, authorize the filing of a motion on my behalf for appointment as lead plaintiff.

3.  I did not purchase or acquire Aegean securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Aegean securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Aegean securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have served or sought to serve as a representative party and/or filed a complaint on behalf of a class under the federal securities laws in the following actions:

- *Strougo v. Barclays PLC et al.*, Docket No. 1:14-cv-05797 (S.D.N.Y. July 28, 2014)

- *Strougo v. Roadrunner Transportation Systems Inc. et al.*, Docket No. 2:17-cv-00147 (E.D. Wis. Feb. 1, 2017).

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

1

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____6/8/2018_____
                (Date)

_____
(Signature)

_____
(Type or Print Name)

2

**AEGEAN MARINE PETROLEUM NETWORK, INC. (ANW)**                          **Strougo, Robert**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| ANW Jun 15 2018 $2.50 Call | | | |
| 1/29/2018 | Purchase | 20 | $2.5000 |
| Common Stock | | | |
| 1/29/2018 | Purchase | 2,000 | $4.8250 |
| 1/29/2018 | Purchase | 1,200 | $4.8500 |
| 2/7/2018 | Purchase | 700 | $4.6000 |
| 2/7/2018 | Purchase | 1,800 | $4.5900 |